UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TIMMIE JACKSON,

                              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

Case # 17-CV-6252-FPG

DECISION AND ORDER

## INTRODUCTION

Timmie Jackson brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 14. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner solely for calculation and payment of benefits.

## BACKGROUND

On August 14, 2013, Jackson protectively applied for SSI with the Social Security Administration ("the SSA"). Tr.[1] 165-70. He alleged disability since December 5, 2011 due to lower back and neck pain, severe arthritis, and depression. Tr. 15, 196. On July 1, 2015, Jackson and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Connor O'Brien ("the ALJ"). Tr. 33-79. On September 21, 2015, the ALJ issued a decision

---

[1] References to "Tr." are to the administrative record in this matter.

1

finding that Jackson was not disabled within the meaning of the Act. Tr. 15-28. On February 24, 2017, the Appeals Council denied Jackson's request for review. Tr. 1-4. Thereafter, Jackson commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I.     The ALJ's Decision

The ALJ's decision analyzed Jackson's claim for benefits under the process described above. At step one, the ALJ found that Jackson had not engaged in substantial gainful activity since the application date. Tr. 17. At step two, the ALJ found that Jackson has the following severe impairments: post-motor vehicle accident degenerative disc disease of the lumbar and cervical spines with radiculopathy, peripheral neuropathy, migraine headaches, obesity, depression, and marijuana dependence. Tr. 17-18. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 18-19.

Next, the ALJ determined that Jackson retains the RFC to perform sedentary work[2] with additional limitations. Tr. 19-27. Specifically, the ALJ found that Jackson requires a sit/stand option that allows him to change position every 30 minutes for up to five minutes without leaving the workstation; can frequently, but not constantly, handle and finger with his right (dominant) hand and occasionally reach, handle, and finger with his left hand; cannot reach overhead, climb ropes, ladders, or scaffolds, or balance on narrow, slippery, or moving surfaces; and can occasionally stoop, crouch, climb stairs, kneel, and crawl. Tr. 19. The ALJ also found that Jackson can tolerate occasional changes in the work setting and moderate noise; can interact with the public, but cannot engage in teamwork; can occasionally make decisions or work-related judgments; can work to meet daily goals, but cannot maintain an hourly, machine-driven, assembly

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

4

line production rate; and requires up to three additional, short, less than five minute, unscheduled breaks. Tr. 19-20.

At step four, the ALJ relied on the VE's testimony and found that Jackson cannot perform his past relevant work as an industrial cleaner, material handler, or commercial cleaner. Tr. 27. At step five, the ALJ relied on the VE's testimony and determined that Jackson can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 27-28. Specifically, the VE testified that Jackson could work as an order clerk and call-out operator. Tr. 28. Accordingly, the ALJ concluded that Jackson was not "disabled" under the Act. *Id.*

## II. Analysis

Jackson argues that remand is required because the ALJ violated the treating physician rule.[3] ECF No. 10-1 at 16-27; ECF No. 16 at 1-5. Specifically, Jackson asserts that the ALJ did not provide "good reasons" for discounting the opinions of his treating physicians Drs. Brendan O'Connor, Morgan Mihok, and Elizabeth Meehan. *Id.* The Court agrees.

### A. Treating Physician Rule

The treating physician rule instructs the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion."

---

[3] Jackson advances another argument that he believes requires reversal of the Commissioner's decision. ECF No. 10-1 at 27-30; ECF No. 16 at 5-9. The Court will not reach that argument, however, because it disposes of this matter based on the ALJ's violation of the treating physician rule.

*Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

When a treating physician's opinion is not given controlling weight, the ALJ must consider the following factors in determining how much weight it should receive: "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. § 416.927(c)(1)-(6).

### B. Dr. O'Connor's Opinions

In August of 2012, Dr. O'Connor opined that Jackson could work only 20 hours per week with reasonable accommodations due to uncontrolled pain that shifts every four to five hours. Tr. 423. Dr. O'Connor opined that Jackson could not lift over five pounds or lift repetitively, could only sit for 30 minutes before needing a 10-minute standing or walking break, and could only walk or stand for 30 minutes before needing a 10-minute break. Tr. 426. He indicated that Jackson's ability to walk, stand, and sit was moderately limited[4] and his ability to push, pull, bend, lift, and carry was very limited.[5] Tr. 427.

Dr. O'Connor's August 2012 assessment contained objective examination findings indicating that Jackson had an abnormal, antalgic gait with his right shoulder held superior to his

---

[4] This means that Jackson can perform these tasks for only two to four hours in an eight-hour workday.
[5] This means that Jackson can perform these tasks for only one to two hours in an eight-hour workday.

left due to pelvic spinal tilting. *Id.* Jackson also had limited range of motion in his back due to pain and muscle spasms in his lower thoracic and upper lumbar spine. *Id.*

On April 1, 2013, Dr. O'Connor opined that Jackson was "fully disabled and unable to participate in any work or training experience." Tr. 432. He indicated that Jackson was very limited in his ability to walk, stand, sit, push, pull, bend, lift, and carry. Tr. 433. Dr. O'Connor noted that recent MRI imaging "demonstrated significant spinal derangement," which he attributed to Jackson's December 2011 car accident. Tr. 432. Dr. O'Connor explained that the MRI "showed multilevel facet arthropathy, spinal stenosis, and neuroforaminal narrowing," which "mean[s] that [Jackson]'s injuries are likely to continue to cause pain which will worsen with overuse or sustained positions." *Id.* Dr. O'Connor noted that ongoing physical therapy and anti-inflammatory and analgesic medication use have not alleviated Jackson's back pain. *Id.* Dr. O'Connor's assessment indicated that Jackson's appearance was "uncomfortable" and that he shifted between sitting and standing every four to six minutes during the examination. Tr. 433.

At an examination on May 21, 2014, Jackson told Dr. O'Connor that he could not lift an eight-month old baby or sit or stand for more than five minutes without changing positions, lies down when his pain is "too much," and cannot help with anything around the house. Tr. 523. Jackson also indicated that he was "very apprehensive about doing any work program at any level" and was "more worried about losing his benefits." *Id.* Based on this information, Dr. O'Connor revised his previous opinion of Jackson's functional limitations.[6] Tr. 523.

---

[6] The Court notes that Dr. O'Connor's reliance on Jackson's subjective complaints is "not a valid reason" for rejecting his opinion. *Mahon v. Colvin*, No. 15-CV-398-FPG, 2016 WL 3681466, at *4 (W.D.N.Y. July 6, 2016); *see also Green-Younger*, 335 F.3d at 107 (holding that a doctor's reliance on the plaintiff's subjective complaints "hardly undermines his opinion as to her functional limitations" because "a patient's report of complaints, or history, is an essential diagnostic tool") (citation omitted).

Specifically, Dr. O'Connor opined that Jackson could only work up to four hours a week with the following restrictions: no lifting over one pound or repetitive lifting, sitting only five minutes at a time before taking a standing or walking break, and walking or standing only five minutes at a time before taking a break and changing positions. Tr. 444. He also indicated that Jackson was very limited in his ability to walk, stand, sit, push, pull, bend, lift, and carry. Tr. 446. This assessment described the same MRI results set forth above and noted that Jackson was "uncomfortable" and shifted between sitting and standing every four to eight minutes during the examination. Tr. 444-45.

The ALJ afforded these assessments only "some weight" because "the clinical evidence of record does not support the extent of limitations" as Jackson's "conditions generally improved over time, despite his subjective complaints of pain." Tr. 24. The ALJ also noted that "the ultimate determination of disability is reserved to the [SSA]." *Id.*

### C. Dr. Mihok's Opinion

In November of 2014, Dr. Mihok opined that Jackson could work up to four hours a week with the following restrictions: no lifting over one pound or repetitive lifting, sitting only five minutes at a time before taking a standing or walking break, and walking or standing only five minutes at a time before taking a break and changing positions. Tr. 451. She also indicated that Jackson was very limited in his ability to walk, stand, sit, push, pull, bend, lift, and carry. Tr. 452.

Dr. Mihok noted that recent MRI imaging "demonstrated significant spinal derangement, likely as a result of the [car] accident." Tr. 451. She explained that the MRI "showed multilevel facet arthropathy, spinal stenosis, and neuroforaminal narrowing," which "mean[s] that [Jackson]'s injuries are likely to continue to cause pain which will worsen with overuse or sustained positions." *Id.* Dr. Mihok noted that physical therapy and medications have not

8

alleviated Jackson's back pain. *Id.* Dr. Mihok's assessment indicated that Jackson's appearance was "uncomfortable" and that he shifted between sitting and standing every three to five minutes during the examination. Tr. 452.

On June 4, 2015, Dr. Mihok opined that Jackson could not sustain full-time employment. Tr. 622. She opined that Jackson's impairments would make him off task for 30% of an eight-hour workday. *Id.* Dr. Mihok indicated that Jackson can sit and stand for five minutes at a time before he must change positions; can sit, stand, and walk less than two hours total in an eight-hour workday; must be able to walk around for two to three minutes every five to ten minutes; must be able to shift positions at will; and needs a cane to stand and walk. Tr. 622-23. She also noted that Jackson will need an unscheduled, two to three minute break every ten minutes. Tr. 623.

Dr. Mihok also opined that Jackson cannot lift over ten pounds; can occasionally twist; cannot stoop, crouch, squat, or climb ladders or stairs; and has limitations using his arms, hands, and fingers. Tr. 624. She indicated that Jackson's impairments will produce "good" and "bad" days, and that he is likely to be absent from work due to his impairments or treatment more than four days per month. *Id.* Dr. Mihok's assessment extensively describes Jackson's symptoms and pain, the clinical findings and objective signs in support of her opinion, and Jackson's treatment and response. Tr. 621.

The ALJ afforded these opinions only "some weight" because Dr. Mihok did not "adequately define" the term "very limited" in her November 2014 opinion[7] and "the clinical evidence of record does not support such radically limited functions" because Jackson's "conditions were improving with medication." Tr. 25.

---

[7] It appears that Dr. Mihok's form opinion is missing pages. Tr. 449-52. The record makes clear, however, that "very limited" is defined as being able to perform an activity only one to two hours in an eight-hour workday. *See, e.g.*, Tr. 425, 427, 431, 437, 443, 457.

9

### D. Dr. Meehan's Opinion

On March 3, 2015, Dr. Meehan opined that Jackson could not participate in activities other than treatment or rehabilitation for at least 12 months. Tr. 455. Physical examination notes revealed an "uncomfortable" appearance and abnormal heel/toe walking, squatting, and musculoskeletal system. Tr. 456-57. Dr. Meehan opined that Jackson's ability to see, hear, and speak is moderately limited and that his ability to walk, stand, sit, push, pull, bend, lift, and carry is very limited. Tr. 457.

The ALJ gave this opinion "some weight" because "the record does not support such extensive limitations" as Jackson's "condition improved over time." Tr. 26.

### E. Failure to Provide "Good Reasons"

The ALJ discounted all the opinions outlined above because she found them unsupported by the record evidence based on Jackson's purported improvement.[8] Tr. 24-26.

Although an ALJ is entitled to discount a treating physician's opinion that she finds inconsistent with the record as a whole (20 C.F.R. § 416.927(c)(4)), she cannot simply assert that the opinion is "unsupported by the record" without further explanation. *See Maldonado v. Comm'r of Soc. Sec.*, No. 12-CV-5297 (JO), 2014 WL 537564, at *13 (E.D.N.Y. Feb. 10, 2014) (noting that these types of "general statements are not sufficiently specific to be of any use in [the district court's] effort to determine whether the ALJ's determination was supported by substantial evidence"). Moreover, a claimant's purported "improvement" does not necessarily override a

---

[8] The ALJ also discounted Dr. O'Connor's opinions because "the ultimate determination of disability is reserved to the [SSA]." Tr. 24. The Commissioner must determine whether a claimant meets the statutory definition of disability, and therefore a medical source's statement that a claimant is "disabled" or "unable to work" does not mean that the Commissioner must find that claimant disabled. 20 C.F.R. § 416.927(d)(1). Even when the treating physician opines on an issue reserved to the Commissioner, however, the ALJ must still give good reasons for refusing to credit that doctor's findings. *See Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) (summary order) (finding that the district court erred when it held that, because the treating physician's opinion went to issues reserved to the Commissioner, the plaintiff was not entitled to an explanation of the reasons why the ALJ refused to credit the treating physician's findings).

treating physician's opinion, and the ALJ is still obligated to adequately explain her reasons for rejecting that opinion. *See Wilson v. Colvin*, No. 15-CV-6316, 2016 WL 5462838, at *12 (W.D.N.Y. Sept. 28, 2016) ("The ALJ also noted that, at some points, the record suggests that plaintiff's condition improved. Here, however, the fact that plaintiff showed some 'improvement' was not so compelling as to override the opinion of plaintiff's treating physicians.")

When the ALJ discounted Drs. O'Connor, Mihok, and Meehan's opinions, she summarily stated that "the record does not support" the limitations those doctors prescribed. Tr. 24-26. She did not elaborate has to *how* the record failed to support those opinions; she merely indicated that Jackson's condition "improved over time." *Id.*

Although she explained elsewhere in her decision how Jackson's condition purportedly improved over time, this discussion does not adequately explain why this warranted rejecting Drs. O'Connor, Mihok, and Meehan's opinions. On November 12, 2013, for example, the ALJ noted that Jackson could walk 45 meters. Tr. 22 (citing Tr. 483). She ignores, however, that the same treatment note indicates that Jackson's pain was a 10/10, he needed to change positions every seven minutes, and he exhibited a stiff, painful gait. Tr. 483.

The ALJ also relied on physical therapy records from December 2, 2013, that indicated some normal examination findings. Tr. 22 (citing Tr. 465). The ALJ fails to mention that Jackson nonetheless continued to report high pain levels, had pain with housekeeping, cooking, and gardening, and experienced increased symptoms with sitting, standing, and walking. Tr. 465. Examination revealed reduced ranges of motion in his back and moderate tightness in his hamstring, quadriceps, and psoas. Tr. 466. Jackson's physical therapist assessed him with back pain and range of motion, strength, and functional limitations. Tr. 467.

The ALJ also discussed several treatment notes from 2014 with "normal" examination findings. Tr. 22 (citing Tr. 504, 509, 513, 526-28, 531). Specifically, Jackson exhibited a "normal" neurological examination with "grossly intact" cranial nerves, "grossly normal" strength, sensation, and movement, and "no vertebral body tenderness and no edema." Tr. 22.

The ALJ's own interpretation of raw medical data does not justify rejecting a treating physician's opinion. *See Morris v. Colvin*, No. 15-CV-5600 (JFB), 2016 WL 7235710, at *9 (E.D.N.Y. Dec. 14, 2016) ("[T]he ALJ's reliance on [the treating physician]'s medical notes indicating that plaintiff had a normal gait and normal motor and sensory exams does not justify his rejection of the treating physicians' opinions."). When an ALJ analyzes a treating physician's report, she "cannot arbitrarily substitute h[er] own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79 (citations omitted).

Moreover, the treatment notes containing these "normal" findings also reveal that Jackson has "[u]nchanged severe chronic back pain" that is "difficult to treat;" his MRI results indicate that his injuries will likely "continue to cause chronic pain which will worsen with overuse or sustained positions;" he is very limited in his ability to walk, stand, sit, push, pull, bend, lift, and carry; and he cannot stand or sit too long or lift his granddaughter. Tr. 510, 514, 515, 531. It was improper for the ALJ to selectively cite only portions of these treatment notes. *See Boehnke v. Colvin*, No. 12-cv-6629 (MAT), 2014 WL 1315552, at *7 (W.D.N.Y. Mar. 28, 2014) ("While the ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, [s]he cannot simply selectively choose evidence in the record that supports h[er] conclusions.") (internal quotation marks and citation omitted).

Accordingly, for the reasons stated, the Court finds that the ALJ erred when she failed to give "good reasons" for discounting Drs. O'Connor, Mihok, and Meehan's treating opinions.

12

### F. Remand for Calculation of Benefits

Jackson asserts that the Court should remand this matter solely for calculation and payment of benefits because Dr. O'Connor's opinions establish that his limitations preclude full-time employment. ECF No. 10-1 at 25. The Court agrees.

District courts are authorized to affirm, reverse, or modify the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand for calculation of benefits is appropriate only in cases where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004). Courts must avoid "contribut[ing] any further to the delay of the determination of [a claimant's] application by remanding for further administrative proceedings" when remand is unnecessary. *Diaz ex rel. E.G. v. Comm'r of Soc. Sec.*, No. 06-CV-530-JTC, 2008 WL 821978, at *8 (W.D.N.Y. Mar. 26, 2008); *see also McClain v. Barnhart*, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (recognizing "delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability").

As explained above, Dr. O'Connor opined on multiple occasions that Jackson could not work at all or that he could work only part-time. Tr. 423, 432, 444. He also consistently opined that Jackson can only sit, stand, and walk for five to 30 minutes at one time before needing a 10-minute break to move around and change positions, and that he can only sit, stand, and walk one to four hours total in an eight-hour workday. Tr. 427, 446, 523.

Under the treating physician rule, Dr. O'Connor's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and

13

is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *see also Green-Younger*, 335 F.3d at 106.

Here, Dr. O'Connor's opinion is supported by objective examination findings, which reflect that Jackson had an abnormal antalgic gait, pelvic spinal tilting, and a limited range of motion in his back due to pain and muscle spasms in his lower thoracic and upper lumbar spine. Tr. 427. Dr. O'Connor's opinion is also consistent with MRI imaging that "demonstrated significant spinal derangement" and "showed multilevel facet arthropathy, spinal stenosis, and neuroforaminal narrowing," which "mean[s] that [Jackson]'s injuries are likely to continue to cause pain which will worsen with overuse or sustained positions." Tr. 432, 444. Dr. O'Connor's treatment notes also indicate that physical therapy and medications did not alleviate Jackson's back pain, and that Jackson often appeared "uncomfortable" and shifted between sitting and standing every few minutes during examinations. Tr. 432-33, 444-45.

Additionally, Dr. O'Connor's opinions are not inconsistent with other substantial record evidence. For example, 2013 treatment notes from another provider, Dr. Albert Koh, indicate that Jackson used a cane and had an antalgic gait, tenderness in his back, a limited lumbar spine range of motion, and weakness. Tr. 284, 288, 300, 329-30, 473-74, 478.

Like Dr. O'Connor, Dr. Mihok opined that Jackson could not participate in full-time work, could only sit, stand, and walk for five minutes at a time before he needed a break and to change positions, and could only sit, stand, and walk for one to two hours total in an eight-hour workday. Tr. 451-52, 622-23. Dr. Mihok also opined that Jackson's impairments will cause him to be off task and to be absent from work more than four days per month.[9] Tr. 623-24.

---

[9] If credited, this opinion establishes that Jackson is disabled. *See* Tr. 77 (VE testimony indicating that an individual is unemployable if he is absent from work two or more times per month).

Similarly, Dr. Meehan opined that Jackson could not participate in activities other than treatment or rehabilitation for at least 12 months and could only sit, stand, and walk one to two hours total in an eight-hour workday. Tr. 455, 457.

Consultative examiner Samuel Balderman, M.D. also concluded, after a one-time examination, that Jackson "has minimal physical limitations." Tr. 406-08. However, this vague opinion does not undermine Dr. O'Connor's assessments because "[t]he treating physician rule recognizes that a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purposes of a disability hearing." *Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 228 (W.D.N.Y. 2016) (quotation marks and citation omitted). A consultative examiner's opinion is generally entitled to "little weight,"[10] because their examinations "are often brief, are generally performed without benefit or review of the claimant's medical history, and, at best, only give a glimpse of the claimant on a single day. Often, consultative reports ignore or give only passing consideration to subjective symptoms without stated reasons." *Hamm v. Colvin*, No. 16CV936(DF), 2017 WL 1322203, at *17 (S.D.N.Y. Mar. 29, 2017) (citing *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) and *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 55 (2d Cir. 1992)).

Dr. O'Connor's opinions that Jackson can only sit, stand, and walk for five to 30 minutes at a time before he needs a 10-minute break and can only sit, stand, and walk for one to four hours total in an eight-hour workday establish that he is disabled. Tr. 427, 446, 523. VE testimony revealed that an individual is unemployable if he is off task 10 minutes every hour and if he cannot sit, stand, and/or walk for six hours total in an eight-hour workday. Tr. 77. Thus, additional proceedings would serve no purpose and would only further delay Jackson's claim, which has been

---

[10] In fact, the ALJ here afforded only "some weight" to Dr. Balderman's opinion because it was "based upon a one-time examination" and the record evidence "supports greater limitations." Tr. 26.

15

pending for over five years.  Accordingly, the Court remands this matter solely for the calculation and payment of benefits.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED, and this matter is REMANDED to the Commissioner solely for calculation and payment of benefits.  The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 11, 2018
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court